■ JUAN MORALES, JR., Appellant, v LEIDA E. MORALES, Respondent. [646 NYS2d 884] —In an action for a divorce and ancillary relief, the husband appeals, as limited by his brief, from stated portions of a judgment of the Supreme Court, Queens County (Beldock, J.H.O.), entered March 8, 1995, which, *inter alia*, (1) directed him to pay (a) child support in the amount of $150 per week and (b) the full amount of the annual private parochial school tuition for the minor child or $3,000, whichever is greater, (2) awarded the wife one-half of his savings and security plan, (3) awarded the wife one-half of his pension plan, and (4) determined the value of the wife's license as a practical nurse to be $30,799.87 in enhanced earning capacity and credited the husband with only a $3,000 share thereof.

Ordered that the judgment is modified, on the law, by (1) deleting the provision thereof which directed the husband to pay the full amount of the annual private parochial school tuition for the minor child, or $3,000, whichever is greater, and substituting therefor a provision directing the husband to pay 68% of the tuition, and (2) deleting the provision determining the value of the wife's license as a practical nurse to be $30,799.87 in enhanced earning capacity and crediting the husband with a $3,000 share thereof, and substituting therefor a provision determining the value of the wife's license to be $98,000 and crediting the husband with a $9,800 share thereof; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements.

It is beyond cavil that the wife's nursing license is marital property subject to equitable distribution under Domestic Relations Law § 236 (B) (see generally, *O'Brien v O'Brien*, 66 NY2d 576). The value of the wife's license is measured by the present

value of the enhanced earning capacity which it affords her *(see, O'Brien v O'Brien, supra,* at 588; *McGowan v McGowan,* 142 AD2d 355, 356-358). The record in this case evinces that the wife held a high-school diploma and worked for seven years as a receptionist for a hospital before entering a nursing program and ultimately gaining the subject license. As such, the value of the wife's license is measured by comparing the average lifetime income of a high-school graduate working in the clerical field and the average lifetime income of a person holding such a license, and reducing the difference to its present value *(see generally, McSparron v McSparron,* 87 NY2d 275, 286). This was precisely the analysis which the husband's expert undertook in determining that the monetary value of the wife's license was $98,000. Nevertheless, the Supreme Court rejected the testimony of the husband's expert and instead embraced the valuation rendered by the wife's expert. However, the valuation method employed by the wife's expert was fatally flawed because it used as a baseline the average lifetime earnings of a high-school graduate working as a nurse's aide, i.e., not as a clerical worker. In employing this valuation method, the wife's expert reasoned that although the wife had never worked as a nurse's aide, it was an occupation for which she could have qualified prior to gaining her license. The logic manifest in the analysis of the wife's expert resulted in a speculative valuation which was not founded in economic reality *(see generally, Harmon v Harmon,* 173 AD2d 98). Since the expert testimony provided by the wife with reference to the valuation issue was immaterial to this case, the only remaining competent testimony on this issue was that of the husband's expert. Accordingly, the court's valuation of the wife's nursing license cannot stand *(see, Iwahara v Iwahara,* 226 AD2d 346).

With reference to the Supreme Court's determination that the husband bore sole responsibility for paying the private school tuition of the parties' daughter, it is well settled that absent a voluntary agreement, a parent is not obligated to pay for a child's private schooling unless special circumstances exist *(see, Matter of Cassano v Cassano,* 203 AD2d 563, 564). Here, it is uncontroverted that no such special circumstances exist. Further, the record establishes that the husband had agreed merely to share in the payment of this expense and did not volunteer to assume such responsibility by himself. Therefore, in accord with the parties' agreement, the husband is directed to share in the payment of the daughter's private school tuition in proportion to his pro rata share of the parties' basic child support obligation *(see,* Domestic Relations Law § 240 [1-b]; *cf., Douglas v Douglas,* 213 AD2d 192).

The husband's remaining contentions are without merit. Bracken, J. P., Copertino, Pizzuto and Goldstein, JJ., concur.